Hyman Feiler
vs. }Law No.62981
Z. Zawatsky & Sons

May 13, 1926

WALSH, J. This is an action against the landlord for breach of an agreement on his part to furnish heat to the tenant in the leased premises. The jury found that the landlord had failed to furnish the heat contracted for and assessed damages. It now comes before us on defendants' motion for a new trial.

After a careful survey of the evidence in this case, we feel that there was ample evidence to sustain the jury's findings on liability and amount of damages.

Motion for new trial denied.

For Plaintiff: Rosenfeld & Hagan.

For Defendants: Fitzgerald & Higgins and P. C. Joslin.

---

Nicolina Ferri
vs. }Eq.No.7304
Vincent J. Ferri,
Minnie Ferri and
Arthur B. Harrington

RESCRIPT

BAKER, J. Final hearing.

The bill in question contains allegations alleging in substance a scheme or conspiracy on the part of the respondents to exact from the complainant certain sums of money and to bring about the foreclosure of a certain mortgage, but the bill prays for no relief against the respondents Vincent J. Ferri and Minnie Ferri. The prayer is that the respondent Harrington may be enjoined from holding a certain mortgagee's sale and that he be compelled to assign said mortgage to the complainant on the payment of such sums as may be found to be due under said mortgage.

It appears that the respondent Harrington is the owner of a second mortgage for $5000, upon which he started foreclosure proceedings, having claimed a breach of the terms of the mortgage.

The first mortgage is held by the Union Trust Company and a third mortgage of $7000 was held by the complainant. Since the beginning of the present proceedings she foreclosed her third mortgage and purchased the equity of redemption to the property in question and now owns the same.

Immediately prior to the bringing of the present bill the complainant tendered to the respondent Harrington $5226.96, which she claimed was the total amount due on said second mortgage held by him, but he refused to accept the same and she then started the proceedings which are the subject of the present bill.

The chief question raised for determination on the testimony is as to the proper amount due on said second mortgage. The complainant claims that the interest on said mortgage is fully paid up to the year 1925, and that in addition to the interest due thereon the expenses of the foreclosure proceedings should be added. Respondent Harrington, on the other hand, contends that no interest whatsoever has been paid on said mortgage since its date, viz: December 20, 1921, and that besides the expenses incident to the foreclosure proceedings there is also due upwards of $1000 for money spent by him in placing insurance on the mortgaged property.

The complainant's case is presented by her own testimony and that of three children, two of whom are minors. It rests chiefly on statements said to have been made by the respondent Vincent J. Ferri, who executed the mortgage which the respondent Harrington is now seeking to foreclose; that in substance all interest and other charges on the mortgage were paid up to the year 1925. This statement was said to have been

made in the Ferri home about July, 1924. The complainant's witness Michael Ferri also testifies that in Vincent Ferri's drug store, in the year 1924, he saw the respondent Harrington receive a check from Vincent Ferri and heard Harrington make a statement, in substance, that this was what was due on the interest on the mortgage and constituted the balance then due. The complainant also argues that it is improbable and unlikely that Mr. Harrington would allow the mortgage interest to run for such a length of time without foreclosing his mortgage or making other attempts to collect the money due, and that he would not spend the amount claimed for insurance without making an attempt to get it back prior to the time foreclosure proceedings were started. The complainant further argues that at the present time the respondent Vincent Ferri is employed by the respondent Harrington and is obviously friendly to him, whereas, on the other hand it clearly appears that there is friction in the Ferri family growing out of the disposition of the estate of the elder Mr. Ferri, who died January 24, 1925, Vincent Ferri, the respondent, being a half-brother to the other Ferri children and stepson of the complainant.

On the other hand, the respondents Harrington and Vincent Ferri testify positively that no interest whatever has been paid on the mortgage in question and Harrington testified that he had to expend considerable sums of money for insurance. His bookkeeper, Mrs. Shaw, who made a very frank and clear witness, also testified that no money had ever been paid to her for insurance or for interest on the mortgage in question and that the records of Mr. Harrington's office showed that no such payments had ever been made. The respondent Harrington testified that the mortgage bore interest at the rate of 7% and that there was due him for payments made for insurance, $1078.68. It also appeared in evidence that the amount of the expenses incident to the foreclosure proceedings started by him was $161.56.

Neither side saw fit to present any records or accounts dealing with the mortgage in question, nor was the mortgage itself or mortgage note introduced, although of course either side could undoubtedly have had them produced.

Testimony presented by the respondent Harrington and the respondent Vincent Ferri, substantiated to some extent by the testimony of Mrs. Shaw, tended to show that during the time when the mortgage in question was outstanding, Vincent Ferri and Mr. Harrington had numerous business dealings in connection with Mr. Ferri's business, in which Mr. Harrington made loans and advances to the respondent Ferri, some of which were repaid and some of which were not. It is very possible, if Michael Ferri saw money paid in Vincent Ferri's drug store by the latter to Mr. Harrington, that it might well have been an occasion when Vincent Ferri was repaying to Mr. Harrington one of these loans or advances.

Further, as bearing upon the credibility of the testimony of Michael Ferri, it is perhaps rather strange that he could give no details whatsoever concerning the check which he claims he saw Mr. Harrington receive in the drug store.

The witness Vincent Ferri did not impress the court very favorably. It is entirely possible that in his father's house in July, 1924, when he was trying to obtain from his parents further advances and was trying to get his financial affairs straightened out, he did make some such statement as is attributed to him by the complainant and by the Ferri children. The two young children of the complainant made a good impression on the

court as witnesses. The fact, however, that the respondent Vincent Ferri may have made those statements in his father's house does not of necessity prove that as a matter of fact all the interest and all the insurance on the mortgage in question had been fully paid up to date. While the court thinks that perhaps the respondent Vincent Ferri did make some such statement, the court believes that it was for the purpose of inducing his parents to advance him more money, and other credible testimony in the case indicates that such statement did not correctly represent the facts.

In regard to the claim that the respondent Harrington's position is improbable because he would not have allowed the interest to remain so long overdue, after considering all the testimony in the case carefully, and taking into consideration the fact that the respondent Harrington and the respondent Vincent Ferri were more or less closely connected in business matters during this period, it does not appear to the court so unlikely or unreasonable that the respondent Harrington should allow the matter to run for a period of perhaps three years. It may be that he felt satisfied with the security he had. The testimony would tend to show, in the judgment of the court, that it was not until he discovered there were other encumbrances following his that he became disturbed. It would appear that he was first told that such encumbrances amounted to $3500, then $7000, and finally was informed by his attorney that there were of record such encumbrances of about $10,500. It was after learning this that he determined upon the foreclosure proceedings in question, after having cancelled and given up a mortgage for $6000 for sixty days which he had previously taken from the respondent Vincent Ferri as additional security.

Apparently, from the testimony, no one of the Ferris ever asked Mr. Harrington what he claimed under his mortgage and never made any attempt to see him about the mortgage. While it is true, perhaps, that Vincent Ferri is not particularly friendly to the complainant, on the other hand the complainant and her family are not on good terms with Vincent Ferri. As far as the court can see neither side can claim any advantage by reason of this family trouble.

The law places upon the complainant the burden of proof of establishing by the fair weight of the testimony her contentions before she is entitled to the relief she asks. The court has attempted to weigh the testimony in the case carefully and, after doing so, finds that the complainant has failed to make out her case by the weight of the evidence presented. Her claim, in the opinion of the court, seems to rest principally upon what she and her witnesses stated they heard the respondent Vincent Ferri say in regard to the matter of interest and other expenses. An examination of the testimony, in the judgment of the court, reveals nothing upon which it is justified in saying that any conspiracy or scheme existed between the respondents to injure the complainant. There would appear to be nothing but conjecture or suspicion upon which to base such a contention. The position urged by the complainant in substance amounts to a charge that the respondent Harrington is wilfully and deliberately attempting to make the complainant pay money to settle an account which has already once been paid. In the judgment of the court the fair weight of the testimony does not support any such finding.

The court will, therefore, answer the issues of fact as follows:

Issue No. 1 is answered, Yes.

Issue No. 2 is answered, No.

Issue No. 3 is answered, No, because of the fact that apparently, from the evidence presented, certain figures therein contained are not correct.

In answer to issue No. 4, the court will find that there is now due the respondent Harrington under the terms of the second mortgage, the principal thereof, the expenses incident to foreclosure proceedings amounting to $161.56, the insurance amounting to $1078.68, and interest on the principal sum at the rate of 7% from December 20, 1921, to date, the evidence showing that the so-called tender by the complainant was not in any event correct, the interest having been figured at the rate of 6% whereas the mortgage in question called for the rate of 7%.

The court will answer issue No. 5, No.

If the complainant tenders to the respondent Harrington the total amount which the court has found under said second mortgage, then the complainant is entitled to the assignment of the mortgage in question; otherwise the prayer of the bill is denied and the bill is dismissed.

For Complainant: A. V. Pettine.
For Respondents: C. L. Cordery.